ORIGINAL



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV - 2 2000
CLERK, U.S. DISTRICT COURT
By _____
Deputy

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

Civil Action No.

**3-00CV2416-M**

Mr. Michael Kapoustin,
And
**Others Similarly Situated**

Plaintiffs,

v.

**THE NATIONAL SPECIALIZED INVESTIGATIVE SERVICE OF THE GOVERNMENT OF BULGARIA,**

**THE MAIN PUBLIC PROSECUTOR'S OFFICE OF THE GOVERNMENT OF BULGARIA**

**MINISTRY OF HEALTH OF THE REPUBLIC OF BULGARIA**

**THE NATIONAL CENTRE FOR INFECTIOUS AND PARASITIC DISEASES OF THE REPUBLIC OF BULGARIA**

Minister of Foreign Affairs
**THE REPUBLIC OF BULGARIA**

Defendant

And

**STEFCHO GEORGIEV, EMILIA MITKOVA and MARIO STOYANOV**

Defendants

Complaint -
Class Action

Jury Trial Demanded

## COMPLAINT

1. This is a civil action brought for monetary relief under the Foreign Sovereign Immunities Act of 1976, 28 USC, Sections 1605 (a)(2)(3) and (a)(5), arising from, *inter alia*, pecuniary loss

1

and injury; physical pain; suffering and disability; psychological distress; emotional anxiety, trauma and death suffered by and upon members of the Class, hereinafter described, alleged as a direct result of the willfully illicit and tortious acts, errors or omissions of officials, agencies or instrumentalities of the Defendant Government, Republic of Bulgaria ("Bulgaria") as aided and abetted during the class period by officials, agencies or instrumentalities of the Federal Republic of Germany ("FRG"), Defendants acting and continuing to act in scienter with Defendant Bulgaria against the Plaintiff and other members of the Class, directly or vicariously effecting the malfeasances, violations of law and injuries claimed as arising from Defendants' unlawful interference with key personnel and the seizure of Plaintiffs' private property, confidential personal records, including electronic data and information together with proprietary medical technology and processes, associated with a commercial activity in the United States to which the Class were a party and claim as essential to the well being, health and life of each Plaintiff as a member of the Class, the interference by Defendants of which it is alleged is cause for the injuries claimed.

2. Plaintiff, on behalf of himself and for his Class Action Complaint, alleges the following upon personal knowledge as to himself and his acts and as to all others upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, including a review of relevant court records where available, published reports and news articles.

### Jurisdiction And Venue

3  This Court has original jurisdiction *in personam* according to 28 USC Section 1330 (a) over the allegations herein of this action pursuant to 28 USC Section 1605(a), Foreign Sovereign Immunities Act. This Court has jurisdiction over those claimed common law torts pursuant to 28 USC Section 1367(a), in that the claims are so related to claims within the original jurisdiction of the district court that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this district as to the allegations under the Foreign Sovereign Immunities Act pursuant to the provisions of 28 USC Section 1391(f)(1)(3), and the common law torts pursuant to 28 USC Section 1391(d) and 28 USC Section 1391(a).

### Class Action Allegations.

5  This action is brought by the Plaintiff as a Class action on his own behalf and on behalf of all others similarly situated pursuant to and relying upon the provisions of 23 (a) and 23 (b) (3) of

the Federal Rules of Civil Procedure for damages including costs and attorneys fees.

6. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of class members is unknown to Plaintiff at this time, it can be ascertained through appropriate discovery. Plaintiff believes that there are thousands of members in the Class. As of March 2000 foreign court records reveal 145 members of the Class as residents of the State of Texas.

7. Plaintiff's claims are typical of the claims of all members of the Class as all members of the Class are similarly effected by Defendants' wrongful conduct, official malfeasance towards the Class, errors and omissions and tortious acts being committed on account of the distinctive quality of the Class, each act whether jointly or severally having been done by Defendants was done in scienter, leading to the breaches of law and injuries complained of. There are common questions of law and fact in the action that relate to and affect the right(s) of the Plaintiffs to the relief sought herein as arise from the improper and illicit interference by the Defendants, directly or vicariously, with, *inter alia*, key persons; clinical drug research, development and manufacture; clinical trials; Plaintiffs' personal records and private property, Defendants unlawful interference or seizure, of which did knowingly or negligently deny medical technology and materials essential to the healthcare, well being and life of members of the Class and entire community of HIV/AIDS seropositive residents of the United States, Defendants acts giving rise to the breaches of law alleged and damages claimed herein, including healthcare cost, general costs and attorneys' fees.

8. There is no conflict as between the individual named Plaintiff and other members of the Class with respect to this action or with respect to the claims for relief herein set forth. The named Plaintiff is a representative party for the Class and is able to and will fairly and adequately protect the interests of the Class.

### Facts

9. The Class so represented by the Plaintiff in this action of which Plaintiff is himself a member, are all HIV/AIDS seropositive residents of the United States from 1993 to the end of 1998 participating in or otherwise having intended to participate, directly or by some vicarious means, in clinical trials of a proprietary, patented and previously unavailable immuno - modulating therapeutic clinical drug, "Factor - R", a biological compound found effective in human beings at moderating the effects of AIDS, Plaintiffs as a Class thereby having or intending to have derived therefrom medical benefits throughout and beyond the Class period of human testing as approved by the Ministry of Health, Republic of Bulgaria Expert Council of Serums and Vaccines, in Protocol No 193 on 18 January 1994, Plaintiffs having either purchased, ordered or having in some other way had inured to them ownership and right of property to existing or future inventories of the said clinical drug Factor - R.

Plaintiff claims as a member of the Class, to have been unlawfully denied during the Class

3

period by Defendant Bulgaria, as vicariously aided by FRG his lawful access to the present and future right to property and medical technology proven to be or highly likely to be essential to the well being, health and life of the Plaintiff and other members of the Class, the act alleged giving rise to this lawsuit and the relief claimed.

10. On or about 18 January 1994, LifeChoice Inc., formerly at 600 Congress Avenue, Suite 1742, Austin, Texas, U.S.A, and LifeChoice International AD, formerly at 96A Rakovski St. Sofia, Bulgaria, the clinical trial sponsors (hereinafter the "Sponsors"), did together with the Ministry of Health, Bulgaria and the Defendant National Center for Infectious and Parasitic Diseases ("NCIPD"), Sofia, Bulgaria commence clinical trials of a newly patented HIV/AIDS immunotherapeuticum called Factor-R.

11. The Sponsors had committed during the Class period to identifying several thousand qualified volunteers in the United States and elsewhere to participate in the proposed clinical trials of Factor - R among HIV/AIDS sufferers in the United States and supplying them with the required quantities of Factor - R.

12. The Expert Council of Serums and Vaccines of Defendant Ministry of Health, Bulgaria, in Protocol No 193, granted to the Sponsors approval of their Phase III trials of Factor - R. A condition for said Defendant's approval was its manufacture of Factor - R at facilities of the Defendant Bulgaria, agencies of Defendant Ministry of Health providing supervision and evaluation of clinical trial data derived from the United States, the Sponsors were to supply all needed financing.

13. On or about May 1995 the Sponsors presented their preliminary clinical results for peer review before the AIDS Clinical Drug Development Committee of the National Institute of Health, Bethesda, Maryland, though still far from conclusive, were nonetheless highly positive and indicative of improving the health of better than 50% of those members of the Class provided Factor - R during the tested period.

14. Plaintiff and other members of the Class had for them quantities of Factor - R secured or set aside for them by the sponsors for or alternatively had the sponsors pay on their behalf certain monies to the Defendant NCIPD, so as to acquire additional personal quantities of Factor - R, the act of which caused to be inured to the Plaintiffs the patrimony and legal right to those inventoried quantities of Factor - R warehoused at the facilities of Defendant NCIPD in Sofia, Bulgaria.

15. From on or about January 1994, up to and including August of 1995 Plaintiffs were uninterrupted in their receipt or ability to order throughout the class Period personal quantities of Factor - R, Plaintiffs became dependent for their good health thereupon.

16. On or about October 1995 Plaintiffs learned that the Defendant, Bulgaria, through its agencies Defendants Main Public Prosecutor's Office and National Investigative Service, acted outside the scope of relevant national and international law when seizing the Plaintiffs inventories of

Factor - R and denying them their lawful access thereto together with the relevant technology, confidential documentation and private medical records essential to the Class's continued treatment and care, the Defendants caused thereby the members of the Class to experience emotional anxiety, psychological and physical distress, pain, suffering and the alleged deaths complained of herein.

17. Upon information and belief, Defendant Bulgaria had acted to unlawfully and without cause seize the Plaintiffs' property and confidential files for discriminatory and political purposes (e.g. the HIV/AIDS status of the Plaintiffs and alleged association of a sponsor co-developer and discoverer of Factor - R to the Church of Scientology or other so called allegedly "pseudo - religious" groups politically targeted by the Defendant Bulgaria and of particular interest to the FRG) and not for any proper or legal purpose.

18. Pursuant to the knowingly fraudulent representation(s) embodied in an official document transmitted to the FRG, the Defendant Bulgaria did cause, and the FRG did willfully and knowingly agree to the wrongful arrest, detention and bodily removal from the FRG of a key person in the healthcare and clinical trial sponsorship of the Plaintiffs.

19. Upon best information and belief the unlawful arrest and continued detention of a key person by the FRG and Defendant Bulgaria, Defendants harassment and interference with other commercial activities is a direct or vicarious consequence of Defendants' belief in a possible associations of the Sponsors to the Church of Scientology or involvement with another allegedly "pseudo - religious" group.

20. As a proximate result of the willful and intentionally wrongful act of the FRG, the Defendant Bulgaria was able, in scienter with agencies or instrumentalities of the FRG, to realize its objective of ending any possibility for the Plaintiffs, as members of the Class, to obtain their lawful property upon which Plaintiffs' health relied and to which they had legal title, denying further their lawful and legal right to realize and participate in medical technology and healthcare for treatment of their own and possibly the treatment of others similarly situated.

21. The Defendants' willful, intentional and improper conduct and unlawful seizure of Plaintiffs' property and confidential files, wrong interference with and discrimination against HIV/AIDS seropositive persons and the tortious acts and abuses of process by Defendant Stefcho Georgiev individually on his own account and as official of National Specialized Investigative Service, Mario Stoyanov individually on his own account and as official of Main Public Prosecutor's Office and Emilia Mitkova individually on her own account and as official of an agency or instrumentality of Defendant Bulgaria, having caused Plaintiffs as a Class to suffer the serious and substantial harm and adverse effects claimed herein as the result of official acts lacking any proper or legal purpose, such unlawful conduct being not only malicious and outrageous, but demonstrative of official discrimination and reckless and/or willful disregard for, *inter alia*, Plaintiffs' right to life without torment; the right of free association and belief; and the right to privacy and enjoyment of property, the acts of which are claimed as being violations of international law such that an award of punitive damages is warranted.

WHEREFORE, Plaintiffs demand a judgement against Defendant National Specialized Investigative Service, Defendant Main Public Prosecutor's Office, Defendant Ministry of Health, Defendant National Center for Infectious and Parasitic diseases, Defendant Republic of Bulgaria, and Individual Defendants Stefcho Georgiev, Emilia Mitkova and Mario Stoyanov jointly and severally for damages in excess of $ 500,000,000, plus punitive damages for suffering and loss of life, pre-judgement interest, post-judgement interest, costs, attorneys fees and such other and further relief as this Court deems just and proper.

Plaintiffs request trial by jury.

Place of trial: Dallas, Texas

Dated at the City of Dallas, in the State of Texas on ........... ~~October~~ *November 2,* 2000.

*Gene Wilson*
*Gene Wilson*
Agent for the Plaintiff
Michael Kapoustin
Address for service:
C/o ....................

*3141 Hood St.*
*Suite 333*
*Dallas, Texas 75219*
*214. 522.6899*

Dated ...... October, 2000,
Dallas, Texas

6